UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
PATRICK NOEL,

                         Plaintiff,

            -against-                          <u>MEMORANDUM & ORDER</u>
                                               11-CV-5370(JS)(ARL)
COUNTY OF NASSAU, POLICE OFFICER
WILLIAM J. CARDONE, SERGEANT STEVEN
CATES, and ASSISTANT DITRICT ATTORNEY
MAUREEN MCCORMICK,

                         Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:        Amy Beth Marion, Esq.
                      Bruce A. Barket, Esq.
                      Barket Marion Epstein & Kearon LLP
                      666 Old Country Road, Suite 700
                      Garden City, NY 11530

For Defendants:       Liora M. Ben-Sorek, Esq.
                      Nassau County Attorney's Office
                      One West Street
                      Mineola, NY 11501

                      Peter A. Laserna, Esq.
                      Melter Lippe Goldstein & Breitstone LLP
                      190 Willis Avenue
                      Mineola, NY 11501

SEYBERT, District Judge:

        Plaintiff Patrick Noel ("Plaintiff") commenced this

action pursuant to 42 U.S.C. § 1983 against defendants Nassau

County (the "County"), Police Officer William J. Cardone ("Officer

Cardone"), Sergeant Steven Cates ("Sergeant Cates"), Assistant

District  Attorney  Maureen  McCormick  ("ADA  McCormick")

(collectively "Defendants"), and other County defendants,[1] alleging violations of his civil rights and related state law claims arising out of his arrest in connection with an automobile accident in which Plaintiff's vehicle struck and killed a pedestrian. Defendants now move for summary judgment. (Docket Entry 43.) For the following reasons, Defendants' motion for summary judgment is GRANTED.

BACKGROUND

I.   Factual Background[2]

On the morning of August 17, 2010, Joseph McCormack, the Chief of the Vehicular Crimes Bureau of the Bronx District Attorney's Office ("Chief McCormack"), e-mailed several New York State prosecutors attaching a news article that described two new traffic laws designed to give prosecutors greater leeway in bringing charges against reckless drivers. (Defs.' 56.1 Stmt., Docket Entry 43-3, Ex. K at 3-5[3].) According to the article, one

---

[1] The additional defendants were the Nassau County District Attorney's Office, the Nassau County Police Department, and John/Jane Doe defendants. By Electronic Order dated August 21, 2013, the Court dismissed with prejudice all claims against these defendants.

[2] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and their affidavits and evidence in support. Any factual disputes will be noted.

[3] Unless otherwise noted, the page numbers of exhibits referenced herein refer to the page numbers provided by the Electronic Case Filing system.

of the laws, referred to as "Elle's Law," mandated the automatic, six-month suspension of the license of "any driver who causes serious physical injury to another person while committing a traffic violation."[4]   (Defs.' 56.1 Stmt. Ex. K at 4.)   About an hour later, one of the prosecutors who received Chief McCormack's e-mail responded and asked, "Joe, when do these [statutes] take effect?"   (Defs.' 56.1 Stmt. Ex. K at 3.)   Chief McCormack responded four minutes later stating, "I did not look yet but I think 90 days."   (Defs.' 56.1 Stmt. Ex. K at 2.)

Six minutes later, Young Choi, a Staff Attorney with the New York Prosecutor's Training Institute, e-mailed Chief McCormack, attaching a link to the New York State Senate's website that contained what he believed to be the language of Elle's Law. (Defs.' 56.1 Stmt. Ex. K at 2.)   In his e-mail, he asked whether Elle's Law had taken effect "[i]mmediately??"   (Defs.' 56.1 Stmt. Ex. K at 2.)   According to Defendants, the link indicated that Elle's Law was newly passed, that it was an E class felony, and that it took effect immediately. (Defs.' 56.1 Stmt. ¶ 19.)   Eleven minutes later, ADA McCormick sent an e-mail on behalf of Chief McCormack to the prosecutors on the original e-mail chain stating,

---

[4] Elle's Law was named after Elle Vandenberghe, a three-year old girl who suffered serious brain injury after a motorist backed up through a crosswalk in New York City to grab an open parking space.   (Defs.' 56.1 Stmt. Ex. K at 4.)

"Young, you are the boss!" and "BTW, Elle's Law is an E Felony."
(Defs.' 56.1 Stmt. Ex. K at 2.)

The next afternoon, on August 18, 2010, ADA McCormick e-mailed the Nassau County District Attorney's Office and several County police officers, advising them that "Governor Patterson signed 'Elle's Law' (Penal Law 120.03-a, Vehicular Assault 3rd Degree) on August 13, 2010," and that it was "EFFECTIVE IMMEDIATELY." (Defs.' 56.1 Stmt. Ex. L at 2 (capitalization in original).) ADA McCormick included what she believed to be the language of the statute, which she apparently lifted from the link to the New York State Senate's website that Young Choi provided the day before. She summarized the statute as follows: "The language of the statute is below but the bottom line is that a driver who causes SPI[5] (including death) to a pedestrian by a moving violation is subject to an 'E' Felony and a VTL 510 suspension up to 7 years." (Defs.' 56.1 Stmt. Ex. L at 2 (footnote added).)

However, the version of Elle's Law that ADA McCormick circulated that afternoon was actually the original version of Elle's Law, which had not passed the New York Legislature (i.e., both the Senate and the Assembly). The version that did pass, and which was subsequently signed into law, was markedly different.

---

[5] "SPI" stands for "serious physical injury."

It did not create a felony offense under the New York Penal Law. Instead, it only amended the New York Vehicle and Traffic Law to require the automatic, six-month suspension of the license of any driver who commits a moving violation that causes serious physical injury to another person. See N.Y. Veh. & Traf. Law § 510(2)(b)(xiv)(A)-(B).

Later that evening, Plaintiff, who was twenty-one years old at the time, was driving to a local Target store for his first night of work. (Noel Dep. Tr., Docket Entry 47-4, at 16-18[6].) While traveling westbound on Old Country Road in Westbury, New York, Plaintiff's vehicle struck and killed a pedestrian near the intersection of Carleton Street and Old Country Road. (Defs.' 56.1 Stmt. Ex. X.) Plaintiff claims that the pedestrian was jaywalking and was "extremely intoxicated," (Pl.'s Opp. Br., Docket Entry 47, at 2), and one witness stated that the pedestrian was "in the street in the middle . . . just standing still." (Ex. E to Pl.'s Opp. Br., Docket Entry 47-5.)

Officer Cardone was the first police officer to arrive at the accident scene. At his deposition, he testified that right before the accident occurred, he was in his vehicle in a parking lot on Old Country Road when he observed Plaintiff's vehicle "pass

---

[6] The page numbers of deposition transcripts referenced herein refer to the page numbers of the actual transcripts, not the page numbers supplied by the Electronic Case Filing system.

[him] at a high rate of speed" and with only one functional headlight. (Cardone Dep. Tr., Docket Entry 43-9, at 28:16-19.) He also previously testified before the New York State Department of Motor Vehicles Administrative Hearings Board that he estimated Plaintiff's vehicle to be traveling at approximately sixty-five miles per hour--well above the posted speed limit of forty miles per hour. (Defs.' 56.1 Stmt. Ex. W, Docket Entry 44, at 7.) However, Officer Cardone was not using radar detection, nor did he have any written certifications demonstrating that he was capable of estimating speed on his own, (Pl.'s 56.1 Counterstmt., Docket Entry 33-2, ¶ 45), although he did testify at his deposition that he received speed estimate training in the police academy, (Cardone Dep. Tr. at 15:11-21). He also testified at his deposition that he attempted to ascertain Plaintiff's speed using his own estimate plus pacing, but that Plaintiff's vehicle struck the pedestrian before he could do so. (Cardone Dep. Tr. at 28:14-29:4.) Plaintiff disputes that he was speeding. (Pl.'s Dep. Tr. 19:23-20:2 (responding, "No," to the question, "At any point on your way to Target, were you traveling in excess of 40 miles per hour?").) There is no dispute, however, that Plaintiff was driving with an inoperable headlight.

When Officer Cardone arrived at the accident scene, he radioed for an ambulance and assistance. (Defs.' 56.1 Stmt. ¶ 39.) Detective Gary Ferrucci, a detective in the Vehicular Crimes and

Reconstruction Center, was the first police officer to respond to Officer Cardone's request. (Defs.' 56.1 Stmt. ¶ 42.) After Detective Ferrucci arrived, he asked Officer Cardone whether he saw the collision, and Officer Cardone responded that he "didn't see the collision but [that he] observed the [moving] violation prior to the collision." (Cardone Dep. Tr. at 26:6-13.)

Shortly thereafter, Detectives David Nystrom and John Lapine arrived at the scene to help with the investigation. (Defs.' 56.1 Stmt. ¶¶ 47-48.) The officers took statements from two witnesses. One stated that she was traveling westbound on Old Country Road and observed Plaintiff's vehicle "traveling at about 60 miles per hour" before it struck the pedestrian. (Defs.' 56.1 Stmt. Ex R at 2-3.) The other witness did not provide an estimate of Plaintiff's speed, but noted that she was traveling at "about 30 miles per hour" and that Plaintiff's vehicle passed her before it struck the pedestrian. (Defs.' 56.1 Stmt. Ex S at 2.)

According to Officer Cardone, at some point after the scene was "settled," Detective Ferrucci advised him that Elle's Law "came into enactment that day" and that the case therefore was a "must arrest." (Cardone Dep. Tr. at 32:8-24.) Thus, believing that Elle's Law created a new felony offense for any moving violation that caused serious physical injury, Officer Cardone arrested Plaintiff for committing a felony in violation of Elle's Law, as well as on charges of speeding, in violation of Section

1180(d) of the New York Vehicle and Traffic Law, and driving with an inoperable headlight at night, in violation of Section 375(2)(a)(1) of the New York Vehicle and Traffic Law. (Defs.' 56.1 Stmt. ¶¶ 55-56; Pl.'s 56.1 Counterstmt. ¶¶ 55-56.) Although Officer Cardone was technically the "arresting officer," Detective Ferrucci testified at his deposition that he called ADA McCormick from the accident scene and that ADA McCormick and the responding officers decided as a group that they had probable cause to arrest Plaintiff for violating Elle's Law.[7] (See Ferrucci Dep. Tr., Docket Entry 43-11, at 35:11-37:10 (testifying that the officers at the scene and ADA McCormick "believed that th[e] case fit the parameters" of Elle's Law and that ADA McCormick "played a part in the decision whether or not an arrest should [have been] made").) Plaintiff was booked and held overnight at the Nassau County Police Department headquarters so that he could be transported to court for arraignment the next morning. (Defs.' 56.1 Stmt. ¶ 57.)

The next morning, on August 19, 2010, approximately twelve hours into Plaintiff's detention, Peter Goldwasser, the General Counsel and Senior Police Advisor for Transportation Alternatives,[8] e-mailed ADA McCormick to advise her that the

---

[7] Defendants claim that only Detectives Nystrom and Ferrucci came to a mutual decision to arrest Plaintiff. (Defs.' 56.1 Stmt. ¶ 51.)

[8] Transportation Alternatives is an advocacy group dedicated to pedestrian and bicyclist safety. According to Defendants, it

version of Elle's Law she circulated the day before was not the version passed by the New York State Legislature:

> Bad news . . . . the description of Elle's law you sent was the original version. Unfortunately, the "A" revised version which passed looks about 110% different (after Assembly Codes had a look I presume). . . . It no longer talks about VA in the 3rd, and instead says that if you commit a moving violation and cause SPI or death, then there is an automatic license suspension for 6 months. Twice in 5 years, then the suspension is for 1 year. That's it. Sorry to be the bearer of bad news.

(Defs.' 56.1 Stmt. Ex. N at 1.) At this point, Plaintiff was already charged under the original version of Elle's Law and was awaiting arraignment in a holding cell in Nassau County District Court. (McCormick Dep. Tr., Docket Entry 43-8, at 98:20-22.) Accordingly, ADA McCormick called Brian Lee, the Deputy Bureau Chief of Arraignment, and "ask[ed] him to do everything possible to expedite [Plaintiff's] production before the court and for him to be released." (McCormick Dep. Tr. at 98:20-99:5.) She also e-mailed everyone who received her e-mail containing the incorrect version of Elle's Law to inform them of her mistake:

---

was "a driving force in convincing the New York State Legislature to pass Elle's Law." (Defs.' 56.1 Stmt. ¶ 26.) Shortly after she circulated the incorrect version of Elle's Law the day before, ADA McCormick forwarded the e-mail containing the incorrect version to Goldwasser and congratulated him on his efforts in getting Elle's Law passed. (Defs.' 56.1 Stmt. Ex. M at 2-5.) Goldwasser replied about an hour later. He thanked ADA McCormick, but did not correct her regarding the text of Elle's Law at that time. (Defs.' 56.1 Stmt. Ex. M at 2.)

> I deeply regret informing you that the version
> of Elle's Law (number one below) is incorrect.
> I received a rescission this morning.  I am
> sick over this.  DO NOT CHARGE 120.03-a.  It
> does not exist.  The version we were provided
> and that I sent out yesterday was the original
> version before the legislature amended it to
> a license suspension statute ONLY.

(Defs.' 56.1 Stmt. Ex. Q at 2 (capitalization in original).)

During Plaintiff's arraignment that same day, Brian Lee, on behalf of the Nassau District Attorney's Office, moved to dismiss the felony charge against Plaintiff.  (Defs.' 56.1 Stmt. Ex. T at 2:11-13.)  Judge Norman Janowitz dismissed the felony charge and arraigned Plaintiff on the two traffic violations and released him on his own recognizance.  (Defs.' 56.1 Stmt. Ex. T at 4:23-5:13.)

In January and June of 2012, the New York State Department of Motor Vehicles Administrative Hearings Board held hearings to investigate Plaintiff's accident pursuant to Section 510 of the New York Vehicle and Traffic Law.  (See Defs.' 56.1 Stmt. Exs. W, CC, DD.)  On July 30, 2012, Administrative Law Judge Maria Sotolongo issued a decision, finding that Plaintiff was "travelling at an excessive rate of speed," in violation of Section 1180(a) of the New York Vehicle and Traffic Law, and that he "also failed to use due care in avoiding striking a pedestrian," in violation of Section 1146 of the New York Vehicle and Traffic Law. (Defs.' 56.1 Stmt. Ex. C at 3.)  She found that these violations

were "contributing factors in [Plaintiff's] unfortunate accident" and suspended Plaintiff's license for ninety days. (Defs.' 56.1 Stmt. Ex. C at 3.)

## II. Procedural Background

Plaintiff commenced this action on November 2, 2011 asserting various constitutional claims pursuant to Section 1983, as well as related state law claims, all stemming from the fact that Plaintiff was arrested for and charged with committing a felony under a non-existent version of Elle's Law. By Electronic Order dated August 21, 2013, the Court dismissed all claims with the exception of Plaintiff's claims for: (1) false arrest pursuant to Section 1983 and under New York state law against Officer Cardone and ADA McCormick; (2) malicious prosecution pursuant to Section 1983 and under New York state law against Officer Cardone and ADA McCormick; (3) failure to intervene pursuant to Section 1983 against Sergeant Cates; and (4) municipal liability pursuant to Section 1983 against the County. Defendants now move for summary judgment on all of these claims. (Docket Entry 43.)

## DISCUSSION

The Court will first set forth the applicable legal standards before turning Defendants' motion more specifically.

## I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials

will not suffice." (citation omitted)); <u>Weinstock</u>, 224 F.3d at 41

("[U]nsupported allegations do not create a material issue of

fact.").

II. <u>Section 1983 Claims</u>

    A.   <u>False Arrest</u>

        Plaintiff contends that ADA McCormick and Officer

Cardone falsely arrested him in violation of the Fourth Amendment

because the arrest was based on an alleged violation of the

original version of Elle's Law, which, as explained above, was not

the version actually passed by the New York State Legislature.

Defendants do not dispute that Officer Cardone incorrectly

arrested and charged Plaintiff for a violation of the original

version of Elle's Law. They argue that they are entitled to

summary judgment nonetheless because Officer Cardone had probable

cause to arrest Plaintiff for speeding and driving with an

inoperable headlight, thereby rendering the entire arrest

privileged.[9] (Defs.' Br., Docket Entry 43-2, at 6-8.) The Court

_____

[9] Defendants also argue that they are entitled to qualified
immunity, (Defs.' Br. at 14-16), and alternatively argue that
ADA McCormick is entitled to summary judgment on the false
arrest claim against her because "ADA McCormick was not at the
scene when Plaintiff was arrested nor was she involved in the
decision making process to arrest Plaintiff," (Defs.' Br. at
14). Because the Court finds that there was probable cause to
arrest Plaintiff, these arguments are moot. However, the Court
notes that the there is evidence in the record that ADA
McCormick played a role in deciding whether Plaintiff should be
arrested. (<u>See</u> Ferrucci Dep. Tr. at 35:11-37:10 (testifying
that the officers at the scene and ADA McCormick "believed that

agrees that Officer Cardone had probable cause to arrest Plaintiff for driving with an inoperable headlight at night. Accordingly, as explained fully below, because Officer Cardone had probable cause to arrest Plaintiff for at least one of the offenses charged, Plaintiff's arrest is entirely privileged and Defendants are therefore entitled to summary judgment on Plaintiff's Section 1983 false arrest claims.

A Section 1983 claim for false arrest under the Fourth Amendment is "substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To succeed on a false arrest claim under New York law, the plaintiff must prove that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of N.Y., 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). The first three elements are not in dispute here. The issue is whether Plaintiff's arrest was privileged.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under

---

th[e] case fit the parameters" of Elle's Law and that ADA McCormick "played a part in the decision whether or not an arrest should [have been] made".)

§ 1983." <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks and citation omitted). Whether there was probable cause to arrest is an objective inquiry, which focuses on the facts known to the arresting officer at the time of the arrest. <u>Jaegly v. Couch</u>, 439 F.3d 149, 154 (2d Cir. 2006). Probable cause exists "when, based on the totality of circumstances, the officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" <u>Finigan v. Marshall</u>, 574 F.3d 57, 62 (2d Cir. 2009) (quoting <u>Zellner v. Summerlin</u>, 494 F.3d 344, 368 (2d Cir. 2007)).

A false arrest claim "turns only on whether probable cause existed to arrest a defendant, . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." <u>Jaegly</u>, 439 F.3d at 154 (citing <u>Devenpeck v. Alford</u>, 543 U.S. 146, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)); <u>accord</u> <u>Tompkins v. City of N.Y.</u>, --- F. Supp. 3d ----, 2014 WL 4467814, at *4 (S.D.N.Y. Sept. 10, 2014) ("The arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged."). In other words, the "focus [is] on the validity of the <u>arrest</u>, and

not on the validity of each charge." Jaegly, 439 F.3d at 154 (emphasis in original). Thus, "a plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." Id.[10]

Turning to this case then, if Officer Cardone had probable cause to arrest Plaintiff on any of the charges filed against Plaintiff (or any uncharged offense as well), the arrest is entirely privileged and Plaintiff's false arrest claims fail as a matter of law. Defendants concede that Officer Cardone could not have had probable cause to arrest Plaintiff under the version of Elle's Law that created a felony offense, since that statute did not exist. Additionally, whether Officer Cardone had probable cause to arrest Plaintiff for speeding depends on whose version of the facts is true. Plaintiff disputes that he was speeding, and while Officer Cardone claims that he estimated Plaintiff's speed at approximately sixty-five miles per hour, he was not using radar

---

[10] The same is true under New York state law: "Probable cause . . . does not require an awareness of a particular crime, but only that some crime may have been committed." Wallace v. City of Albany, 283 A.D.2d 872, 873, 725 N.Y.S.2d 728, 730 (3d Dep't 2001) ((citations omitted)); accord In re William H., 264 A.D.2d 676, 677, 695 N.Y.S.2d 93 (1st Dep't 1999) ("Since the police had probable cause to believe that appellant had committed a crime, they properly arrested appellant notwithstanding any error by the police concerning the correct charge to be filed." (citations omitted)).

detection, nor did he have any written certifications demonstrating that he was capable of estimating speed on his own. Additionally, although witnesses informed the police officers that they observed Plaintiff speeding, Plaintiff aptly notes that these witnesses are not experts in estimating speed, which, at the very least, implicates the credibility of their statements. The Court cannot resolve this factual dispute on a motion for summary judgment.

The Court need not resolve this dispute, however, because Officer Cardone had probable cause to arrest Plaintiff for driving with an inoperable headlight. There is no dispute that Officer Cardone directly observed Plaintiff driving with an inoperable headlight at night, which constitutes a traffic infraction under Section 375(2)(a)(1) of the New York Vehicle and Traffic Law. See N.Y. VEH. & TRAF. LAW § 375(2)(a)(1) (stating, in relevant part, that "[e]very motor vehicle . . . driven upon a public highway during the period from one-half hour after sunset to one-half hour before sunrise . . . shall display[ ] at least two lighted head lamps on the front, one on each side, having light sources of equal power"); N.Y. VEH. & TRAF. LAW § 155 (stating that a "traffic infraction" is the "violation of any provision of [the New York Vehicle and Traffic Law] . . . or [the violation] of any law, ordinance, order, rule or regulation regulating traffic which is not declared by [the New York Vehicle and Traffic Law] or other

law of this state to be a misdemeanor or a felony"). Under New York state law, a police officer may arrest a person who has committed a traffic infraction. Specifically, Section 140.10(1)(a) of the New York Criminal Procedure Law provides that a police officer may arrest a person without a warrant for "[a]ny offense when [the officer] has reasonable cause to believe that such person has committed such offense in [the officer's] presence." N.Y. CRIM. PROC. LAW § 140.10(1)(a). Section 155 of the New York Vehicle and Traffic Law, in turn, provides that "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense." N.Y. VEH. & TRAF. LAW § 155. Taking these sections together, driving with an inoperable headlight at night constitutes an "offense" subject to a warrantless arrest under New York state law. See United States v. Scopo, 19 F.3d 777, 785 (2d Cir. 1994) ("Under New York State law, it is clear that a traffic offense can be a basis for an arrest."); People v. Pealer, 20 N.Y.3d 447, 459, 985 N.E.2d 903, 910, 962 N.Y.S.2d 592, 599 (2013) (Smith, J., concurring) (noting, in dicta, that under Section 375(32) of the New York Vehicle and Traffic Law, a violator of Section 375 "could theoretically be punished by imprisonment"); N.Y. VEH. & TRAF. LAW § 375(32) ("[T]he violation of any . . . provision[ ] this section [other than with respect to adequate brakes] . . . shall be punishable by a fine not exceeding

one hundred fifty dollars or by imprisonment for not exceeding

thirty days, or by both such fine and imprisonment . . . ."

(emphasis added)). Accordingly, Officer Cardone had probable

cause to arrest Plaintiff for violating the New York Vehicle and

Traffic Law. The entire arrest is therefore privileged.

The fact that driving with an inoperable headlight is a

minor traffic offense is of no legal consequence. It is well

settled that "'[w]hen an officer observes a traffic offense--

however minor--he has probable cause to stop the driver of the

vehicle' and effect a subsequent arrest for that offense." Kennedy

v. City of N.Y., 570 F. App'x 83, 84 (2d Cir. 2014) (summary order)

(emphasis added) (quoting Scopo, 19 F.3d at 782). Probable cause

to arrest for a violation of a traffic offense "'presents a total

defense to [a plaintiff's] action[ ] for false arrest . . . [and]

entitle[s the defendants] to judgment as a matter of law.'" Id.

(first, third, and fourth alterations in original) (quoting

Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013)); accord

Virginia v. Moore, 553 U.S. 164, 171, 128 S. Ct. 1598, 1604, 170

L. Ed. 2d 559 (2008) (holding that the Fourth Amendment did not

prohibit a warrantless arrest for driving on a suspended driver's

license, a misdemeanor under state law, noting that "[i]n a long

line of cases, [the Court] ha[s] said that when an officer has

probable cause to believe a person committed even a minor crime in

his presence . . . . [t]he arrest is constitutionally

reasonable"); Atwater v. City of Lago Vista, 532 U.S. 318, 354,
121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001) (holding that the Fourth
Amendment did not prohibit a warrantless arrest for a minor
criminal offense--specifically, a misdemeanor seatbelt violation
punishable only by a fine under state law).

Numerous courts within and without this Circuit have
upheld arrests based on minor traffic violations. See, e.g., Brown
v. Fisher, 251 F. App'x 527, 534 (10th Cir. 2007) ("[The plaintiff]
does not dispute that he was driving with an inoperable headlight
at nighttime at the time he was pulled over. This constitutes a
violation of state law, and is a valid basis for his arrest.");
Scopo, 19 F.3d at 782 (finding that police officer had probable
cause to stop and arrest the defendant because they "directly
observed him violating the traffic laws by not signalling [sic]
lane changes"); Tompkins, 2014 WL 4467814, at *5 (finding that
police officer had probable cause to arrest because he asked the
plaintiff for his vehicle registration and he was unable to provide
it, a violation of Section 401(4) of the New York Vehicle and
Traffic Law); Djangmah v. Falcione, No. 08-CV-4027, 2013 WL 208914,
at *11 (S.D.N.Y. Jan. 18, 2013) (finding that police officer had
probable cause to arrest because the plaintiff operated a vehicle
with excessively-tinted windows, a violation of Section 375(12-
a)(b) of the New York Vehicle and Traffic Law), adopted by, 2013
WL 1195261 (S.D.N.Y. Mar. 25, 2013); Smart v. City of N.Y., 08-

CV-2203, 2009 WL 862281, at *4 (S.D.N.Y. Apr. 1, 2009) (finding that police officers had probable cause to arrest because they observed the plaintiff double-park his car facing the opposition direction of traffic, a violation of Section 1203 of the New York Vehicle and Traffic Law).

Nonetheless, Plaintiff argues that the length of his detention demonstrates that Officer Cardone only arrested Plaintiff because he believed that Elle's Law created a new felony offense, and not because Plaintiff had committed a traffic violation. (Pl.'s Opp. Br. at 8-9.) This argument fails for two reasons. First, the case Plaintiff relies on for this argument, Gilles v. Repicky, 511 F.3d 239 (2d Cir. 2007), is inapplicable to the facts of this case. There, the Second Circuit held that an investigatory traffic stop that exceeds the time needed to confirm or dispel an officer's suspicion that a crime is being committed may violate the Fourth Amendment because the traffic stop can evolve into a de facto arrest not supported by probable cause. Id. at 245-46. Here, however, there was no initial investigatory traffic stop that evolved into a de facto arrest. Rather, Officer Cardone arrested Plaintiff for committing traffic infractions in addition to arresting Plaintiff for a violation of Elle's Law. Gilles is therefore inapplicable. Second, it is irrelevant that Officer Cardone's decision to arrest Plaintiff may have been motivated by his belief that Elle's Law created a new felony

offense since "[a]n arresting officer's state of mind (<u>except for the facts that he knows</u>) is irrelevant to the existence of probable cause." <u>Zellner</u>, 494 F.3d at 369 (emphasis in original) (internal quotation marks and citations omitted).

In sum, there is no dispute that Plaintiff was operating his vehicle with an inoperable headlight at night. Accordingly, Officer Cardone had probable cause to arrest Plaintiff for violating Section 375(2)(a)(1) of the New York Vehicle and Traffic Law. The Court recognizes that in most cases, an arrest for driving with an inoperable headlight is likely extreme and therefore discouraged. However, it is much less extreme in a case like this one, where there is no dispute that Plaintiff was involved in a fatal accident while operating a vehicle with an inoperable headlight at night. For the reasons explained above, Defendants' motion for summary judgment with respect to Plaintiff's Section 1983 false arrest claims against ADA McCormick and Officer Cardone is GRANTED.

B.    <u>Malicious Prosecution</u>

Plaintiff also brings Section 1983 malicious prosecution claims against ADA McCormick and Officer Cardone based upon the charge that Plaintiff committed a felony in violation of the original version of Elle's Law. Summary judgment on these claims is also appropriate.

Like a false arrest claim, a Section 1983 claim for malicious prosecution under the Fourth Amendment is "substantially the same" as a claim for malicious prosecution under New York state law. Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003). To prevail on a malicious prosecution claim under New York law, the plaint must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotation marks and citation omitted).

A plaintiff asserting a malicious prosecution claim under Section 1983 must also prove a fifth element: "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted). "A malicious prosecution claim under the Fourth Amendment requires a seizure 'pursuant to legal process,' and a warrantless arrest would not qualify." Biswas v. City of N.Y., 973 F. Supp. 2d 504, 527 (S.D.N.Y. 2013) (quoting Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995)), appeal dismissed, Biswas v. Kwait, 576 F. App'x 58 (2d Cir. 2014); accord Gordon v. City of N.Y., 10-CV-5148, 2012 WL 1068023, at *7 (E.D.N.Y. March 29, 2012) ("[W]here the plaintiff's claim arises out of a warrantless arrest, he cannot

bring a malicious prosecution claim based only on pre-arraignment events, since there have been no actions taken pursuant to judicial process." (citation omitted)).

Here, Plaintiff cannot maintain a malicious prosecution claim based on the faulty charge under the original version of Elle's Law because he did not suffer a post-arraignment deprivation of liberty with respect to this charge. Once ADA McCormick discovered that Plaintiff was improperly charged with a felony under the original version of Elle's Law, she immediately arranged for the dismissal of the felony charge at Plaintiff's arraignment. (McCormick Dep. Tr. at 98:20-99:5.) The felony charge was dismissed at Plaintiff's arraignment and he was arraigned on the two traffic violations and released on his own recognizance. (Defs.' 56.1 Stmt. Ex. T at 4:25-5:13.) Thus, Plaintiff's Section 1983 malicious prosecution claims fail as a matter of law because Plaintiff did not suffer a post-arraignment deprivation of liberty. See Guerrero v. City of N.Y., No. 12-CV-2916, 2013 WL 5913372, at *5 (S.D.N.Y. Nov. 4, 2013) (dismissing the plaintiff's malicious prosecution claim because "the criminal charges were dismissed at [the plaintiff's] arraignment"); Biswas, 973 F. Supp. 2d at 527 (dismissing the plaintiff's malicious prosecution claim because she "was never arraigned and therefore . . . could not suffer any post-arraignment seizure as required to support a § 1983 malicious prosecution claim").

Plaintiff's malicious prosecution claims fail for the additional reason that the record contains no evidence from which a reasonable juror could infer that Officer Cardone or ADA McCormick acted with actual malice. Under New York law, the actual malice element of a malicious prosecution claim "does not require proof that the defendant was motivated by actual spite or hatred, but means only that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Samtani v. Cherukuri, No. 11-CV-2159, 2015 WL 64671, at *11 (E.D.N.Y. Jan. 5, 2015) (internal quotation marks and citation omitted). Here, the evidence demonstrates that ADA McCormick made a mistake in believing that Elle's Law created a new felony offense. Within hours of disseminating the incorrect version of Elle's Law, but unfortunately, after Plaintiff was arrested and charged under the incorrect version, ADA McCormick corrected her mistake and arranged for the dismissal of the felony charge against Plaintiff. Although ADA McCormick's mistake was negligent and the Court is uncomfortable with what occurred in this case, ADA McCormick's conduct does not rise to level required to prove actual malice. With respect to Officer Cardone, the evidence shows that in charging Plaintiff with a violation of Elle's Law, he relied on Detective Ferrucci's instruction that Elle's Law created a new felony offense that required an arrest based on what Officer

Cardone observed at the accident scene. There simply is no evidence that Officer Cardone acted with an improper motive.

In sum, Plaintiff's Section 1983 malicious prosecution claims fail as a matter of law because Plaintiff did not suffer a post-arraignment deprivation of liberty with respect to the faulty charge under Elle's Law, nor is there evidence to support the conclusion that ADA McCormick or Officer Cardone acted with actual malice. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's Section 1983 malicious prosecution claims against ADA McCormick and Officer Cardone is GRANTED.

C.    Failure to Intervene

Plaintiff also asserts a failure to intervene claim under Section 1983 against Sergeant Cates, a police officer who was working in the Records Bureau at the County Police Department the night of Plaintiff's arrest. However, a failure to intervene claim "is contingent upon the disposition of the primary claims underlying [such] claim." Apostol v. City of N.Y., No. 11-CV-3851, 2014 WL 1271201, at *7 (E.D.N.Y. Mar. 26, 2014) (alteration in original) (internal quotation marks and citation omitted). Here, Plaintiff's underlying constitutional claims do not survive summary judgment. Thus, Plaintiff's failure to intervene claim likewise fails. Defendants' motion for summary judgment with respect to Plaintiff's Section 1983 failure to intervene claim against Sergeant Cates is therefore GRANTED.

D.  Municipal Liability

Plaintiff also seeks to hold the County liable pursuant to the doctrine of municipal liability set forth in the Supreme Court's decision in Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978).  However, like Plaintiff's failure to intervene claim, "a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor." Henry-Lee v. City of N.Y., 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010).  Because Plaintiff's underlying constitutional claims fail, no municipal liability attaches.  See Jennis v. Rood, 310 F. App'x 439, 440 (2d Cir. 2009) ("There cannot be an independent claim against the [municipal defendant] for municipal liability unless [the plaintiff] could prove a constitutional violation by one of the [municipality's employees].").  Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's municipal liability claim against the County is GRANTED.

III. State Law Claims

Finally, Plaintiff also asserts state law claims of false arrest and malicious prosecution against Officer Cardone and ADA McCormick.  Because all of the federal claims herein have been dismissed, the Court must decide whether to exercise supplemental jurisdiction over Plaintiff's state law claims.

Under 28 U.S.C. § 1367(a), federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, under 28 U.S.C. § 1367(c)(3), a district court may "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction, a district court should balance the "values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988). As a general rule, when all of the federal claims have been dismissed, the factors ordinarily "'will point toward declining jurisdiction over the remaining state-law claims.'" In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (quoting Cohill, 484 U.S. at 350 n. 7); see also Tops Marks, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice.").

Here, however, the balance of factors weigh in favor of exercising supplemental jurisdiction over Plaintiff's state law

claims.  As noted above, false arrest and malicious prosecution claims under Section 1983 are substantially the same as their New York state law counterparts.  Thus, adjudicating Plaintiff's state law claims does not require the investment of additional judicial resources, thereby promoting judicial economy and convenience. Additionally, there is no "substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar, and which is applied by those courts every day."  Henry v. NYC Health & Hosp. Corp., No. 13-CV-6909, 2014 WL 957074, at *12 (S.D.N.Y. Mar. 10, 2014).  And finally, although this is the first dispositive motion the Court has entertained, this action certainly is not in its early stages. Thus, the Court finds that it should exercise supplemental jurisdiction over Plaintiff's state law claims.

Because Plaintiff's state law claims of false arrest and malicious prosecution are substantially identical to their federal counterparts, both legally and factually, they fail for the same reasons as the federal claims.  Accordingly, Defendants' motion for summary judgment on Plaintiff's state law claims of false arrest and malicious prosecution is GRANTED.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment (Docket Entry 43) is GRANTED. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     February _7_, 2015
           Central Islip, NY